Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 CR 450 | **DATE** | 2/25/2004 |
| **CASE TITLE** | USA vs. Babajide Sobitan | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, the government has proven, beyond a reasonable doubt, that defendant is guilty of violating 8 U.S.C. Section 1326(a)-(b)(2). Enter Memorandum Opinion and Order. The Court enters judgment of guilty on count one of the superseding indictment. Cause is referred to the Probation Department for the preparation of a presentence investigation report. Sentencing set for 4/14/04 at 10:00 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | | FEB 2 6 2004 date docketed | |
| ✓ | Docketing to mail notices. | | | | 45 |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| MF | courtroom deputy's initials | | | date mailed notice | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No: 03 CR 450 |
| | ) | |
| BABAJIDE SOBITAN, a.k.a. | ) | Judge John W. Darrah |
| PAUL A. MAKINDE | ) | |

**DOCKETED**

FEB 2 6 2004

## OPINION AND ORDER

On October 29, 2003, the United States ("the Government") sought and obtained a superseding indictment against Defendant, Babajide Sobitan, also known as Paul A. Makinde. The indictment charged that Defendant, an alien who had been previously deported and removed from the United States on or about July 19, 1996, and whose removal was subsequent to a conviction for an aggravated felony, knowingly and intentionally attempted to enter the United States without previously obtaining the express consent of the United States' Attorney General for reapplication by the Defendant for admission into the United States, in violation of 8 U.S.C. § 1326(a)-(b)(2). On December 15, 2003, a bench trial was held.

This matter now comes before the Court following the presentation of evidence. The Court has considered the evidence, including the testimony of witnesses and exhibits, and has further considered the written arguments of counsel for the parties and the authority cited therein. For the following reasons, the Government has proven, beyond a reasonable doubt, that Defendant is guilty of violating 8 U.S.C. § 1326(a)-(b)(2).

45

## EVIDENTIARY OBJECTIONS

Defendant raised objections to some of the factual statements in the Government's closing brief.

Defendant first contends that the Government's arguments that Defendant obtained his permanent resident card fraudulently, that Defendant fraudulently used multiple identities, and that Defendant illegally entered the country on two occasions after obtaining his renewed permanent resident alien card are irrelevant and inflammatory. The Court has not drawn any such unfairly prejudicial inferences. Accordingly, Defendant's objection is denied.

Defendant next asserts that Government Exhibits 2, 8, and 9 are irrelevant and based on facts not admitted into evidence. The motion to exclude these exhibits is denied.

Defendant lastly asserts the Government's claims that a deported alien revokes the alien's permanent resident alien status and possession of a resident alien card does not confer status as a permanent resident alien are not supported by competent evidence in the record. However, this statement is an accurate statement of the law. *Perez-Rodriguez v. INS*, 3 F.3d 1074, 1078-79 (7th Cir. 1993).

## FINDINGS OF FACT

Based on a stipulation by the parties, the Court finds the following facts have been proven beyond a reasonable doubt.

1. Defendant Babajide Sobitan is an alien. He was born in Nigeria and is not now, and has never been, a citizen of the United States.

2. Defendant, using the name Paul Makinde, was convicted of two aggravated felonies, conspiracy to possess with intent to distribute and to distribute heroin on October 16, 1990, and manufacturing and delivery of a controlled substance and armed violence on October 11, 1991.

3. Defendant, using the name Paul Makinde, was deported from the United States on January 19, 1996. When he was deported on January 19, 1996, Defendant was given a copy of Government Exhibit 2 (INS Form 294, Notice of Country to Which Deportation Has Been Directed and Penalty for Reentry Without Permission); Government Exhibit 2 was read to him by an immigration official, and Defendant signed the Government's retained copy of Government Exhibit 2 with the name "Makinde."

4. On April 29, 2003, Defendant knowingly and intentionally attempted to enter the United States at O'Hare International Airport, Chicago, Illinois, using the name Babajide Sobitan.

The parties also stipulated that:

If called to testify at trial, Bola Aro, would testify as follows:

That she is the sister of Defendant Babajide Sobitan. She resides in Hammond, Indiana, along with her husband Sunday Aro. She is employed as a case manager supervisor for the Community Mental Health Counseling in Chicago, Illinois. She is a United States citizen.

That sometime in February 2000, her brother Babajide received a notice in the mail sent to his residence in Dolton from the Immigration and Naturalization Service ("INS"). This notice advised her brother that his permanent resident alien card was due to expire, its ten year period coming to an end. He was directed to appear at the Hammond INS office to renew the resident alien card.

In September 2000, that she accompanied her brother Babajide to the Hammond INS Office. At the office, he was both photographed and fingerprinted by the INS officers in the office.

Sometime in November 2000, Defendant Babajide Sobitan received in the mail his replacement permanent resident alien card.

On at least two occasions since he received his replacement permanent resident alien card, her brother has traveled to Nigeria to visit with relatives and to attend family business there. On both of these occasions, he returned to Chicago entering the United States at O'Hare Airport.

During the entire time since he was issued his replacement permanent resident alien card and the date of his arrest on the present charges he has resided at his home in Dolton, Illinois along with Felicia Sobitan and his children.

If called to testify at trial, Sunday Aro would testify under oath as follows:

That he is the brother-in-law of Defendant Babajide Sobitan and the husband of Bola Aro. That he resides in Hammond, Indiana, is a citizen of Nigeria, and is a legal resident alien of the United States.

On or about December 20, 2002, he traveled with his brother-in-law to Nigeria to visit family members residing there in Nigeria.

Upon his return from Nigeria, he and the Defendant came through O'Hare Airport on or around January 21, 2003. Both of them were stopped at Customs and INS as they passed through the international gate. Both of them presented their passports (both of them had their Nigerian passports) and his [sic] both of them presented their alien registration cards. Both of the

documents possessed by Babajide Sobitan were in his name, Babajide Sobitan, and are the documents identified as Government Exhibits 4 and 5.

After inspecting their entry documents, personnel from Customs and INS permitted their entrance into the United States.

Both of them then returned to their respective homes, Defendant in Dolton, Illinois and Sunday in Hammond, Indiana.

If called to testify, Adebowale Sobitan would testify under oath as follows:

He is the son of Defendant Babajide Sobitan. He is a United States citizen.

On or about July 29, 2001, he traveled with his father to visit family members residing there in Nigeria.

Upon his return from Nigeria, he and his father came through O'Hare Airport on or around August 21, 2001. Both of them were stopped at Customs and INS as they passed through the international gate. Both of them presented their passports (his father presented his Nigerian passport and he presented his U.S. passport) and his father also presented his alien registration card. Both of these were in his name Babajide Sobitan and are the documents identified as Government Exhibits 4 and 5.

After inspecting their entry documents, personnel from Customs and INS permitted their entrance into the United States.

Both of them then returned to their home in Dolton, Illinois.

The Government also called Lisa Zamora, an INS Adjudications Officer, who testified, contrary to the stipulated testimony of Bola Aro set out above, that the INS had no procedure to notify holders of permanent resident cards individually that their cards were about to expire.

5

Rather, once the INS received an Application to Replace Alien Registration Card from the alien, the INS notified the alien of the time and place to personally appear.

The Court also heard testimony from Lori Glud, Senior Immigration Inspector assigned to Chicago O'Hare International Airport, regarding the procedures used in inspection of passengers arriving on international flights.

The testimony of Zamora and Glud was un-rebutted, un-impeached, and highly credible.

Based on the evidence presented, the Court also finds the additional following facts have been proven beyond a reasonable doubt:

5. Defendant failed to submit Form I-212 to the INS, and Defendant's "A-File" does not contain any request seeking permission to reapply for readmission into the United States.

6. If Defendant would have presented identification to INS officials under the name Paul Makinde upon arriving in the United States from Nigeria in August 2001 and January 2003, Defendant would have been referred to a secondary inspection, for further questioning by INS officials who would have conducted a more detailed inspection of Defendant's background, which would have disclosed Defendant's status as a deported alien.

7. Defendant was not referred to secondary inspection upon arriving in the United States from Nigeria in August 2001 or in January 2003.

8. If the name Paul Makinde would have been queried in the INS's computer system, an INS official would have discovered Defendant was previously deported under the name Paul Makinde.

9. Defendant filed a renewal application for his resident alien card, Form I-90, in 2000. Nothing Defendant wrote on the Form I-90 discloses that he was also known as Paul Makinde or was previously deported.

10. A computer check of the Form I-90 would only search for the name provided on the resident alien card.

11. Defendant's resident alien card only stated the name Babajide Sobitan.

12. After he returned from his 1996 deportation, Defendant only took actions with respect to his status as a resident alien within the United States.

## **CONCLUSIONS OF LAW**

Section 1326(a)(2) of Title 8 of the United States Code states that any alien who "enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission . . . ." In addition, any alien "whose removal was subsequent to a conviction for commission of an aggravated felony" may be fined and imprisoned for a term of up to twenty years. 8 U.S.C. § 1326(b).

This offense encompasses five elements which the Government must prove beyond a reasonable doubt: (1) that Defendant was an alien at the time of the alleged offense; (2) that Defendant had been previously deported from the United States; (3) that Defendant's deportation was subsequent to a conviction for the commission of an aggravated felony; (4) that Defendant knowingly and intentionally attempted to reenter the United States; and (5) that Defendant did not receive the express consent of the Attorney General of the United States to apply for

readmission to the United States after having been deported. *See, e.g., United States v. Herrera-Ordones*, 190 F.3d 504, 508 (7th Cir. 1999). Based on the above findings, the Court further finds that elements (1) through (4) have been proven beyond a reasonable doubt.

*Element Five*

The INS provides a formal method to obtain the express consent of the Attorney General.[1] The alien must first request permission to reapply for admission to the United States by submitting Form I-212 to an INS consular official. 8 C.F.R. § 212.2(b); *United States v. Blanco-Gallegos*, 188 F.3d 1072, 1074-75 (9th Cir. 1999) (*Blanco-Gallegos*). A certificate of non-existence stating that an alien's INS A-File, the file containing all INS records and documents relating to a particular alien's contact with the United States, does not include a request to the Attorney General seeking permission to reapply for admission into the United States is sufficient to establish element five of a violation of § 1326. *See Blanco-Gallegos*, 188 F.3d at 1075; *United States v. Martus*, 138 F.3d 95, 97 (2d Cir. 1998) (*Martus*).

Congress enacted § 1326 to stop deported aliens from easily reentering the United States after being deported. *See United States v. Carlos-Colmenares*, 253 F.3d 276, 278-79 (7th Cir. 2001) (*Carlos-Colmenares*). Congress placed the burden on deported aliens to disclose their status to the Government and obtain express consent to reapply for entry into the United States before seeking a visa, permanent legal resident status, or otherwise entering into the United States. *See Carlos-Colmenares*, 253 F.3d at 278. As the Seventh Circuit stated, "[a]n alien who

---

[1] On March 1, 2003, the responsibility for providing immigration services was transferred from the INS to the United States Citizen and Immigration Services, a bureau of the Department of Homeland Security. The Secretary of the Department of Homeland Security now has the authority to administer and enforce the immigration laws. 8 C.F.R. § 2.1. For the purposes of this opinion, these changes are irrelevant.

has been deported reenters this country at his peril. He had better make certain that he has the Attorney General's express consent to enter, because if he does not he is guilty of a felony." *Carlos-Colmenares*, 253 F.3d at 278.

Here, the Government presented a certificate of non-existence stating that Defendant's A-File does not contain any request seeking permission to reapply for admission into the United States. The Defendant also conceded at trial that he never submitted Form I-212. Accordingly, the Government has established, beyond a reasonable doubt, that Defendant did not comply with the formal method to obtain the express consent of the Attorney General.

Defendant argues that the INS, by previously permitting Defendant into the country, has effectively given Defendant the "express consent" of the Attorney General to enter the United States. Specifically, Defendant contends that: (1) he was contacted by the INS to renew his resident alien card at the Hammond, Indiana INS office; (2) in 2000, his renewal permanent resident alien card application, along with an accurate picture and thumb print, was presented to INS officials, investigated by INS officials, and authorized by INS officials empowered to enforce the INS laws, including a Regional Deputy Director of the INS; and (3) on two separate occasions, he presented his resident alien card to INS officials upon returning from trips to Nigeria and was readmitted into the United States.

"[T]he requirement that the Attorney General's consent be 'express' is a warning that the alien not try to infer consent from ambiguous circumstances." *Carlos-Colmenares*, 253 F.3d at 278. Here, Defendant argues that the Attorney General gave his consent based on circumstances which, at best, are ambiguous. It is undisputed that Defendant did not follow the Attorney General's required method of seeking permission to reapply for admission into the United States.

In any event, the Attorney General, through the conduct of the INS, could not be held to have given his "express consent" to reapply for admission into the United States when an alien, such as Defendant here, failed to inform these INS officials of his prior deportations. *Martus*, 138 F.3d at 97.

In this case, upon returning to the United States from Nigeria in August 2001 and January 2003, Defendant presented INS officials with a passport and resident alien card which stated Defendant's name was Babajide Sobitan. If Defendant had disclosed any information relating to his alias, Paul Makinde, he would have been referred to a secondary inspection for further questioning. Furthermore, a computer query of the name Paul Makinde would have revealed that Defendant was previously deported.

Defendant also failed to disclose, on his Form I-90 renewal application for a resident alien card, that he had been previously deported or used the name Paul Makinde. When approving a renewal application, a computer check by the INS would have only searched for the name Babajide Sobitan and not Paul Makinde. Under these circumstances, it cannot be said that the Attorney General, acting through INS officials, gave Defendant the "express consent" to reenter the United States.

Defendant also ignores a requirement of § 1326(a); namely, that the express consent given by the Attorney General allowing an alien to reapply for admission into the United States must be obtained "prior to his reembarkation at a place outside the United States." Defendant relies only on conduct occurring in this country after he returned to the United States from his deportation in 1996.

The Government has proven, beyond a reasonable doubt, that Defendant violated element five of the offense by failing to obtain the express consent of the Attorney General before applying for readmission to the United States after having been deported.

## **CONCLUSION**

For the foregoing reasons, the Government has proven, beyond a reasonable doubt, that Defendant is guilty of violating 8 U.S.C. § 1326(a)-(b)(2).

Dated: February 25, 2004

JOHN W. DARRAH
United States District Judge